**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:13CV-00080-JHM**

**EMILY A. DALE**                                                                                           **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security**                                                   **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Emily A. Dale ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 15) and Defendant (DN 16) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 13). By Order entered July 15, 2013 (DN 14), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on April 29, 2008[1] (Tr. 22, 73). Notably, in her DIB application, Plaintiff alleged she became disabled on May 15, 2007 (Tr. 73). Her claim was originally denied due to a lack of insured status as of the alleged onset date (Tr. 22). However, during a hearing on June 22, 2009, Plaintiff amended her claim to reflect an onset of disability beginning October 24, 2002 (Tr. 22). As a result, Plaintiff's claim was sent back to the local Social Security Office to obtain a medical determination (Tr. 22).

Plaintiff's DIB application was denied initially on April 13, 2010 and upon reconsideration on June 24, 2010 (Tr. 22). Meanwhile, Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on July 27, 2010[2] (Tr. 22). These claims were consolidated for purposes of conducting a hearing and issuing a decision (Tr. 22). On August 23, 2011, Plaintiff requested her claims be amended to reflect an onset date of December 30, 2003 (Tr. 22). On October 13, 2011, Administrative Law Judge Roland D. Mather ("ALJ") conducted a video hearing from Louisville, Kentucky (Tr. 22). Plaintiff appeared in Bowling Green, Kentucky, and was represented by attorney Mary G. Burchett-Bower (Tr. 22). Also present and testifying at the hearing was Robert G. Piper, an impartial vocational expert (Tr. 22).

In a decision dated January 18, 2012, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2005 (Tr. 24). The ALJ then evaluated this adult disability claim pursuant to the five-step sequential evaluation process

---

[1]This is the protective filing date.

[2]This is the protective filing date. Additionally, the application is not included in the administrative record submitted to the Court by Defendant.

promulgated by the Commissioner (Tr. 22-31). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since the amended onset date, December 30, 2003 (Tr. 25). At the second step, the ALJ determined since the amended date of disability, December 30, 2003, Plaintiff has had the following "severe" impairments: history of degenerative disc disease of the lumbar spine, status post November 2002 right L4-5 diskectomy, and status post May 2007 lumbar spine fusion at L-4-5 (Tr. 25). At the third step, the ALJ concluded since the amended onset date of disability, Plaintiff has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 25).

At the fourth step, the ALJ found that prior to May 15, 2007, Plaintiff had the residual functional capacity to perform a wide range but not full range of light work because of certain exertional and nonexertional limitations (Tr. 25, Finding No. 5). Specifically, the ALJ found Plaintiff was able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk with normal breaks for a total of about six hours in an eight hour workday; sit with normal breaks for a total of about six hours in an eight hour workday; pushing and pulling were unlimited other than as shown for lift and/or carry; climbing ladders, ropes and scaffolds, stooping, kneeling, crouch and crawling should not have been performed on more than an occasional basis with more frequent ability to climb ramps and stairs; and she should have avoided concentrated exposure to vibration (Tr. 25, Finding No. 5). Additionally, the ALJ found Plaintiff's musculoskeletal problems did pose some work related limitations prior to the date last insured, December 31, 2005, but only to the extent physically strenuous work was precluded (Tr. 29, Finding No. 5). The ALJ found prior to May 15, 2007, Plaintiff was capable of performing her past relevant work as a manager/owner of a restaurant, manager of a retain store, public relations representative, and manager/owner of a

3

theater (Tr. 30, Finding No. 7).

Notably, at the fourth step, the ALJ made a second finding regarding Plaintiff's residual functional capacity (DN 29, Finding No. 6). Specifically, the ALJ found beginning on May 15, 2007, Plaintiff has the residual functional capacity to perform sedentary work except she cannot sustain concentration, persistence and pace to perform a full eight hour workday secondary to chronic pain (Tr. 29, Finding No. 6). The ALJ found beginning on May 15, 2007, Plaintiff's residual functional capacity prevented her from being able to perform her past relevant work (Tr. 30, Finding No. 8).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity beginning May 15, 2007, her age, her education, and her past work experience as well as testimony from the vocational expert (Tr. 30-31). The ALJ found since May 15, 2007, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform (Tr. 31). Therefore, the ALJ concluded Plaintiff has not been under a "disability," as defined in the Social Security Act, prior to May 15, 2007, but she became disabled on that date and has continued to be disabled through the date of the decision (Tr. 31). Additionally, the ALJ concluded Plaintiff was not under a disability at any time through December 31, 2005, the date last insured (DN 31).

In sum, the ALJ granted Plaintiff's SSI application because she became disabled on May 15, 2007. However, the ALJ denied Plaintiff's DIB application because she became disabled after her insured status expired on December 31, 2005.

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision denying her DIB application (Tr. 15-18). Plaintiff contended she was disabled before her date last insured (Tr. 15). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 8-10).

4

CONCLUSIONS OF LAW

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

> 5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim for DIB benefits at the fourth step because her insured status expired on December 31, 2005 and her disability did not begin until May 15, 2007. However, the ALJ granted Plaintiff's claim for SSI benefits at the fifth step because he concluded she became disabled on May 15, 2007.

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 8-10). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Secretary of Health and Human Serverices, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Secretary of Health and Human Services, 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

Plaintiff disagrees with Finding No. 5 (DN 15, Fact and Law Summary at Pages 2-7). In Finding No. 5, the ALJ determined **prior to May 15, 2007**, Plaintiff had the residual functional capacity to perform a wide, but not full, range of light work due to certain exertional and nonexertional limitations (DN 15, Fact and Law Summary at Pages 2-7). Finding No. 5 pertains to the fourth step in the sequential evaluation process.

At the fourth step, the Administrative Law Judge makes findings regarding the claimant's residual functional capacity. 20 C.F.R. §§404.1520(a)(4)(iv) and (e), 416.920(a)(4)(iv) and (e). The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what the claimant can do despite limitations caused by her physical and mental impairments. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946; Social Security Ruling 96-5p; Social Security Ruling 96-7p. Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 404.1527(c), 404.1529; Social Security Ruling 96-7p.

Plaintiff argues Finding No. 5 is not supported by substantial evidence in the record (DN 15, Fact and Law Summary at Pages 2-7). More specifically, Plaintiff contends this finding is not supported by substantial evidence because the ALJ erred in failing to give controlling weight to the August 30, 2011 medical assessment prepared by her primary care physician, Dr. Ian Scott Gilson (DN 15, Fact and Law Summary at Pages 2-6). Defendant acknowledges that Dr. Gilson is a

7

treating source (DN 16, Fact and Law Summary at Pages 5-6). However, Defendant asserts the ALJ's rationale for discounting Dr. Gilson's opinion is supported by substantial evidence in the record and comports with applicable law (DN 16, Fact and Law Summary at Pages 5-7).

The regulations indicate that treating source opinions must receive "controlling weight" when two conditions are met: (1) the medical opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the medical opinion "is not inconsistent with other substantial evidence in ...[the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Gayheart v. Commissioner, 710 F.3d 365, 376 (6th Cir. 2013). If the Administrative Law Judge does not give the treating physician's medical opinion controlling weight, "then the opinion is weighed based on the length, frequency, nature, and extent of the treating relationship, ... as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. Id. (citing 20 C.F.R. § 404. 1527(c)(2)-(6)). Further, the Administrative Law Judge must provide "good reasons" for the weight given to the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p; Gayheart, 710 F.3d at 376; Wilson v. Commissioner of Social Security, 378 F.3d 541, 545-546 (6th Cir. 2004). Notably, "[t]hese reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Gayheart, 710 F.3d at 376 (citing Social Security Ruling 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). "This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" Gayheart, 710 F.3d at 376 (quoting Wilson, 378 F.3d 544).

8

On **August 30, 2011**, Dr. Gilson filled out a residual functional capacity assessment regarding Plaintiff (Tr. 594-595). Notably, Dr. Gilson indicated "[t]**he limitations stated in this assessment have been present since 12-30-2003 and continuing**" (Tr. 595) (emphasis added). Dr. Gilson opined in an eight hour work setting Plaintiff can stand at a work station for 30 or less minutes at a time; can sit at a work station less than two hours; can be at work station a total of two hours or less if she has the option to alternate between sitting and standing; can walk 30 feet or less; and can lift five pounds occasionally (up to 1/3 of an eight hour work day) (Tr. 594). Additionally, Dr. Gilson opined that Plaintiff is restricted as to climbing/balancing; twisting/turning; stooping/bending; reaching/handling; restricted as to use of both hands for simple grasping, pushing and pulling, and fine manipulation; and restricted as to use of both feet for operating foot controls (Tr. 594). Dr. Gilson also opined that Plaintiff's ability to work is restricted by the following side effects from her medication: constipation, groggy, memory loss, nausea, disorientation, stomach upset, slower reaction time, and confusion (Tr. 595). Further, Dr. Gilson opined the following vocational environmental factors are contraindicated: unprotected heights, driving automotive equipment, cold (below 40 degrees), heat (above 100 degrees), and noise (Tr. 595). Dr. Gilson classified Plaintiff's condition as "acute" and indicated she would miss work "all the time" because of treatments/impairments/symptoms (Tr. 595). Finally, Dr. Gilson commented as follows:

> In severe pain all the time. Loss of insurance in 2003-2005 prevented going to more doctors. Pain prevents work of any type.

(Tr. 595).

In connection with Finding No. 5, which focuses on Plaintiff's residual functional capacity prior to May 15, 2007, the ALJ made findings regarding the assignment of weight to Dr. Gilson's medical opinion (Tr. 25-29). The ALJ began the process with the following relevant observations

9

about the medical evidence addressing Plaintiff's condition prior to May 15, 2007:

> While the claimant alleges disability since December 30, 2003, there is very little medical evidence prior to the date last insured of December 31, 2005, or more importantly, prior to the established onset date of May 15, 2007. The claimant underwent gallbladder removal in March 2004. At that time it is important to note that she was not on any pain medications (Ex. B42F, pgs. 7-9, 10). When seen by Dr. Rutledge of Central Kentucky Pain Professionals in June and July 2004, the claimant reported a recent epidural steroid injections had been moderately helpful. She advised that some leftover Hydrocodone that she was occasionally taking at night was controlling her discomfort quite well. She reported that she was working very hard in her restaurant and often found herself doing extra duty. Clinical findings noted pain complaint with range of motion maneuvers and general tenderness in the spine. At that time Dr. Rutledge noted that functional form was not applicable because the claimant was working very hard on a daily basis (Exs. B39F, B43F, pg. 2). Treatment records of January 21, 2009 from Cumberland Pain Associates note the claimant specifically reported that following the 2002 lumbar surgery, she tolerated the procedure with improvement of symptoms until 2006 (Ex. B20F, pg. 4). When seen for neurosurgical evaluation on August 25, 2007, the claimant reported minor lower back pain following the 2002 surgery and exacerbation of pain in March 2007 (Ex. B13F, pg. 2). When seen for neurosurgical evaluation in late October 2006, the claimant reported she did well following the 2002 surgery and that her pain had slowly and progressively returned to the point it was at that time giving her a great deal of difficulty (Ex. B7F, pg. 9). MRI of the lumbar spine at that time revealed mild L3-4, L5-S1 disc bulges, evidence of the prior discectomy, and loss of disc space/desiccation with right lateral recess neural foraminal epidural fibrosis, however there was no evidence of recurrent herniated nucleus pulposus. MRI of the cervical spine at that time showed mild degenerative disc disease with disc bulge osteophytes at C4-5, C5-6 and C6-7 and slight flattening of the ventral cord at C4-5 (Exs. B7F, B44F, pg. 2). In early 2007 the claimant was given an epidural steroid injection (Ex. 44F). She began treating with orthopedic surgeon William A. Schwank, M.D., on March 14,2007, at which time the exam showed normal gait, overweight status at 64 inches in height and weight of 206 pounds, and pain and tenderness in the lumbar spine following percussion and palpation (Ex. B46F). EMG/nerve conduction study in late March 2007 revealed findings indicative of severe right S1 radiculopathy (Ex. B49F). The claimant ultimately underwent

posterior lateral interbody fusion with allograft and autograft at L4-5 on May 15, 2007 (Ex. B9F).

Given all of the above, the claimant's complaints of incapacitating pain and functional limitations are not credible as of the amended onset date of December 30, 2003, nor are they credible as of the date last insured of December 31, 2005. It appears her discomfort started to progressively return in 2006 and became debilitating in 2007. While there are multiple statements from employees of the claimant attesting to her physical limitations and limited work at the restaurant (Exs. B11E-B16E), these are not given great weight given the claimant's own report of her functioning and pain complaints to treating physicians and specialists.

(Tr. 28).

Next, the ALJ made findings involving the weight accorded to Dr. Gilson's opinions about Plaintiff's condition prior to May 15, 2007 (Tr. 28-29). Specifically, the ALJ's decision reads as follows:

As for the opinion evidence, it is noteworthy that the claimant had extensive specialized evaluation with orthopedic and neurosurgical specialists, but that none opined she was disabled or assessed any work related limitations. While Dr. Gilson opined in a residual functional capacity assessment of August 30, 2011 that the claimant could not have sustained any combination of sitting, standing or walking to perform even sedentary work as of December 30, 2003, little weight is given to this opinion as it is not supported by the objective record and specifically Dr. Gilson's own treatment records (Ex. B36F). The undersigned notes that Dr. Gilson acknowledged the claimant's loss of insurance during 2003-2005 prevented her from going to more doctors (Ex. B48F). Indeed, his treatment notes reveal improvement of pain in May 2003, followed by an absence of lumbar pain complaint until December 30, 2003, when she reported exacerbation of discomfort after carrying a large pot in the restaurant where she worked (Ex. B23F, pg. 23). Thereafter records through February 2004 showed complaints largely focused on abdominal discomfort due to the gallbladder (Ex. B23F). In addition, Dr. Gilson's records show an absence of treatment from November 2004 until December 2006 (Ex. B23F, pgs. 17-18).

(Tr. 28-29).

11

The undersigned concludes the ALJ has provided "good reasons" for why Dr. Gilson's opinions failed to meet the second prong of the "controlling weight" test. Specifically, the ALJ found Dr. Gilson's opinions regarding Plaintiff's condition prior to May 15, 2007, are inconsistent with the doctor's own treatment records and the records of the treating orthopedic and neurosurgical physicians. Additionally, the ALJ expressed "good reasons" for discounting Dr. Gilson's opinion. Specifically, the ALJ concluded the limitations were not supported by substantial evidence in the record in light of Dr. Gilson's own treatment records and the records of the treating orthopedic and neurosurgical physicians. In reaching these conclusions, the undersigned has considered Plaintiff's contentions and the medical evidence in the record. In sum, the ALJ's findings are supported by substantial evidence in the record and comport with applicable law.

Plaintiff also argues that Finding No. 5 is not supported by substantial evidence in the record because the ALJ erred in failing to call a medical expert to address the question of onset of disability (DN 15, Fact and Law Summary at Page 6-7). Plaintiff asserts that Social Security Ruling 83-20 directs a medical advisor should have been called to render an opinion regarding onset of disability because of the gradual worsening of her back condition during the nearly two year gap in treatment (DN 15, Fact and Law Summary at Pages 6-7).

Defendant responds by pointing out that Social Security Ruling 83-20 merely authorizes Administrative Law Judges to call on medical experts when the existing medical sources do not contain sufficient evidence to make a determination (DN 16, Fact and Law Summary at Page 8). Defendant argues there was sufficient medical evidence and nonmedical evidence in the record for the ALJ to make the onset of disability determination (DN 16, Fact and Law Summary at Page 8).

When a claimant files an application for Disability Insurance Benefits, the claimant must establish that she became "disabled" prior to the date her insured status expired. 42 U.S.C. § 423(a) and (c); Moon v. Sullivan, 923 F.2d 1175, 1182 (6th Cir. 1990); Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1988) (per curiam). Social Security Ruling 83-20 sets forth the Commissioner's policy and describes the relevant evidence an Administrative Law Judge should consider when determining the onset date of disability. Blankenship v. Bowen, 874 F.2d 1116, 1122 (6th Cir. 1989). Notably, Plaintiff cites a portion of Social Security Ruling 83-20 that addresses situations where an Administrative Law Judge does not have a developed medical record to rely on in determining the onset of disability. McClanahan v. Commissioner, 474 F.3d 830, 837 (6th Cir. 2006). This is not the case here because the medical record was well enough developed and the ALJ carefully reviewed it in determining the onset of Plaintiff's disability. In sum, the undersigned concludes the ALJ's finding regarding onset of disability is supported by substantial evidence in the record and comports with applicable law.

In Finding No. 6, the ALJ determined beginning on May 15, 2007, Plaintiff had the residual functional capacity to perform less than a full range of sedentary work because she cannot sustain concentration, persistence, and pace to perform a full eight hour workday secondary to chronic pain (Tr. 29). Plaintiff acknowledges that Finding No. 6 is supported by substantial evidence (DN 15, Fact and Law Summary at Page 7). However, Plaintiff contends she was unable to engage in any substantial work as of the alleged onset date, December 30, 2003, for the reasons stated in her objection to Finding No. 5 (DN 15, Fact and Law Summary at Page 7). The undersigned has already addressed and found no merit to the arguments set forth in support of Plaintiff's objection to Finding No. 5.

Next, Plaintiff disagrees with Finding No. 7 (DN 15, Fact and Law Summary at Pages 7-8). The bold text part of Finding No. 7 reads as follows:

> **Prior to May 15, 2007, the claimant was capable of performing past relevant work as a manager/owner of a restaurant, manager of a retail store, inventory clerk, public relations representative and manager/owner of a theater. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404. 1565 and 416.965).**

(Tr. 30). Plaintiff argues Finding No. 7 is not supported by substantial evidence because the ALJ should have accepted Dr. Gilson's assessment for the period prior to the date last insured (DN 15, Fact and Law Summary at Page 7). Alternatively, Plaintiff argues Finding No. 7 is not supported by substantial evidence because the ALJ did not ask the vocational expert if her past work as an inventory clerk could be performed with the limitations assessed in Finding No. 5 (DN 15, Fact and Law Summary at Page 7). Plaintiff, points out the vocational expert identified the inventory clerk job as medium work (DN 15, Fact and Law Summary at Pages 7-8). Plaintiff argues the ALJ's finding she can perform this job is inconsistent with Finding No. 5 which restricts her to a limited range of light work (DN 15, Fact and Law Summary at Page 8).

Defendant argues the ALJ was not required to obtain vocational expert testimony to determine whether Plaintiff could perform her past relevant work because this was a step four finding (DN 16, Fact and Law Summary at Page 9). Additionally, Defendant asserts the ALJ mistakenly listed the inventory clerk job in the bold text of Finding No. 7 (DN 16, Fact and Law Summary at Pages 9-10). Defendant points out in the explanation that follows the ALJ found Plaintiff was not able to perform her past relevant work as an inventory clerk (DN 16, Fact and Law Summary at Page 10).

The undersigned concludes there is no merit to the first part of Plaintiff's argument for the reasons set forth in the section addressing her objections to Finding No. 5. Notably, Plaintiff's alternative argument is based on a typographical error in the bold text part of Finding No. 7. The undersigned reached this conclusion after reviewing the ALJ's discussion that follows the bold text part of the finding. Specifically, the ALJ's discussion reads as follows:

> According to the vocational expert, the claimant's past relevant work as a public relation representative (Victoria's Secret) was sedentary in exertion and skilled (SVP 7) in complexity. The work as a manager/owner of a restaurant, manager of a retail store, and manager/owner of a theater was all classified in the Dictionary of Occupational Titles as light in exertion and skilled in complexity (SVP 7), but that the restaurant work and theater job were performed by the claimant at the medium exertional level. The work as an inventory clerk was medium and semi- skilled (SVP 4).
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of the past relevant work **with the exception of the inventory clerk**, the undersigned finds that Ms. Dale was able to perform it as generally performed. Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

(Tr. 30) (emphasis added). In sum, the ALJ found, prior to May 15, 2007, Plaintiff was not able to perform her past relevant work as an inventory clerk because the physical and mental demands of that job exceeded her residual functional capacity.

Additionally, contrary to Plaintiff's assertion, at the fourth step the ALJ was not required to ask the vocational expert whether Plaintiff could perform her past relevant work with the residual functional capacity identified in Finding No. 5. Wright-Hines v. Commissioner of Soc. Sec., 597 F.3d 392, 395 (6th Cir. 2010) (citing 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2)). Consistent with the regulations, the ALJ did obtain testimony from the vocational expert regarding the physical and mental demands of Plaintiff's past relevant work, as generally performed in the national economy

15

and, if there was a difference, as Plaintiff actually performed the job (Tr. 30). 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). The ALJ then relied on the vocational expert's testimony in determining whether Plaintiff had the residual functional capacity to perform her past relevant work (Tr. 30). In sum, the ALJ's findings are supported by substantial evidence in the record and fully comport with applicable law.

In Finding No. 8, the ALJ concluded, beginning on May 15, 2007, Plaintiff's residual functional capacity prevented her from being able to perform her past relevant work (Tr. 30). Plaintiff agrees with Finding No. 8 (DN 15, Fact and Law Summary at Page 8). However, Plaintiff contends for the reasons previously stated she could not perform her past relevant work as of the alleged onset date (DN 15, Fact and Law Summary at Page 8). In the preceding paragraphs, the undersigned already addressed and found no merit to Plaintiff's arguments.

Plaintiff argues Finding No. 13 is not supported by substantial evidence for the reasons stated in her objections to Finding Nos. 5 and 7 (DN 15, Fact and Law Summary at Page 8). The undersigned has already addressed and found no merit to Plaintiff's arguments. Therefore, there is no merit to Plaintiff's objection to Finding No. 13.

Finally, Plaintiff argues Finding No. 14 is not supported by substantial evidence for the reasons stated in her objections to Finding Nos. 5 and 7 as well as reasons otherwise appearing in the oral and documentary record (DN 15, Fact and Law Summary at Page 8). The undersigned has addressed and found no merit to Plaintiff's arguments in support of her objections to Finding Nos. 5 and 7. Moreover, the administrative record does not support Plaintiff's objection. Therefore, there is no merit to Plaintiff's objection to Finding No. 14.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**. This is a final and appealable Order and there is no just cause for delay.

Copies:    Counsel